Chicago, Rock Island and Mexico Railway Company v. J. W. Harton.

Decided July 1, 1905.

**1.—Expert Evidence—Physician's Opinion—Personal Injury.**

Where a physician, the principal expert witness for the injured party, was asked on cross-examination, "If a man was injured a year and a half ago, and he was for more than a year prior to the present time seen doing ordinary farm work, and if he looked to be in a condition that Mr. Harton seems to be, what would be your opinion as to whether he had suffered from a fracture of the inner table of the skull?" it was error for the court to sustain an objection thereto on the ground that the question was not in the proper form.    The question was competent, and the hypothetical case stated being based on the evidence, the answer of the witness was improperly excluded.

**2.—Same—Injury to Brain.**

It was also competent to further ask the physician on cross-examination for his opinion, based on the fact that the injured party was doing farm work for more than a year and seemed to be in good health, as to whether the injury had affected his brain.

Appeal from the District Court of Dallam.    Tried below before Hon. Ira Webster.

*N. H. Lassiter* and *Robt. Harrison,* for appellant.

*Del. W. Harrington* and *Wallace & Lumpkin,* for appellee.

CONNER, CHIEF JUSTICE.—This suit was brought by appellee against the Chicago, Rock Island & Mexico Railway Company, in the District Court of Dallam County, Texas, on the 29th day of September, 1903, to recover damages for injuries alleged to have been sustained by him on the 3d day of April, 1903, while he was in the employ of the appellant in its shops at Dalhart, Dallam County, Texas, in the capacity of machinist helper.    On the day appellee was injured he was assisting a machinist under whom he had been assigned to work in installing a compressed air jack.    It was alleged that, by reason of certain defects in its construction, the piston or plunge would not work in the cylinder of said air jack, and became fastened in said cylinder; that in the effort to withdraw or eject said piston, the agents, servants and employes of the appellant, in a careless, unskillful and negligent manner, turned a heavy pressure of steam into said air jack, which blew it to pieces; that by reason of said explosion a heavy substance struck appellee on the head, thereby fracturing his skull, breaking his cheek bone, breaking and crushing his nose, cutting a large gash across his chin, knock-

ing out one of his teeth, and impairing his hearing. It was further alleged that appellee was not conversant with the construction of the appliances in use by appellant; that he was not warned of any danger; that he was in the discharge of his duties at the time, and that appellant was guilty of negligence in so applying the steam and in so failing to warn him of danger. The appellant denied, generally, the allegations in appellee's petition, and alleged that appellee was guilty of contributory negligence, and that he assumed the risk of the danger. The case was tried on the 22d day of November, 1904, and a verdict and judgment was rendered for appellee in the sum of $7,500.

We think the second and third assignments of error must be sustained.

Dr. J. A. Hedrick, appellee's principal expert witness, on cross-examination, was asked the following question by appellant's counsel: "If a man was injured a year and a half ago, and he was for more than a year prior to the present time seen doing ordinary farm work, and if he looked to be in a condition that Mr. Harton seems to be, what would be your opinion as to whether he had suffered from a fracture of the inner table of the skull?" The answer of the witness to this question was excluded by the court on appellee's objection that the question was not "in the proper form." The following further question was also propounded by the appellant: "If Mr. Harton, who was injured in this way, has gotten up, and has been doing farm work for more than a year, and seems to be in good health, I will ask you whether or not, in your opinion, his brain was affected in any way by that injury in April, a year ago?" The answer to this question was also excluded by the court on appellee's objection that the answer would be "an opinion as to the condition of the plaintiff, and that the witness' opinion as to his appearance would not be that of an expert."

There was evidence tending to support the facts stated in the hypothetical questions quoted, and Dr. Hedrick had testified that he attended appellee as a physician immediately after his injury, and examined his injuries; that, among others, as he then diagnosed it, he found a fracture of the skull at the base of the brain, this diagnosis being induced principally by flow of blood from one of appellee's ears; that such a fracture was very dangerous, and patients rarely recovered entirely therefrom; that an injury of that kind would materially affect the physical condition of one who had received it, shocking the nervous system, and rendering the injured party liable to epilepsy and kindred diseases. He had also stated, on cross-examination, that he had examined appellee about eighteen months before the trial, and that he then seemed to be an entirely well man, and at the time of testifying presented that appearance; that the skull consisted of an outer and an inner table; that a fracture of the outer table only was not a dangerous or permanent injury. There was also evidence tending to show that appellee's other injuries were not serious, and that for a year or more appellee had been performing the ordinary duties of a farm laborer.

In this condition of the testimony, it seems to us that it was quite important to appellant to show by Dr. Hedrick, if it could be done, that his original diagnosis of the injury to the skull was incompatible with subsequent developments. Much of his testimony in chief, tend-

ing to show permanent injury, was in answer to hypothetical questions put to him in behalf of appellee. Appellant certainly had the right to cross-examine the witness as to matter drawn out on his examination in chief, and was not bound to accept as true the facts as hypothetically stated in appellee's behalf, and we see no reason, and, particularly, nothing in the form of the questions, why appellant should not be permitted to offer the opinion of Dr. Hedrick on the hypothetical case made by the proof, as appellant insisted it was. It was for the jury to finally determine the true state of the case as made by all of the competent evidence. It seems hardly necessary to notice the objection that the answer sought was but an opinion. The witness was, as stated, interrogated as an expert by appellee, and it is elementary that opinions of medical men are competent on subjects within the range of their profession. (Rule 27, page 107, and Rule 30, page 144, Lawson's Expert and Opinion Evidence, and illustrations given in the notes.)

Other assignments need not be noticed, but, because of the errors mentioned, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*